

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No: 04 CR 86-2 |
| | ) | |
| JOHN E. BOYLE, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION REGARDING THE GROUPING OF THE MAIL
FRAUD AND TAX COUNTS UNDER THE FACTS OF THIS CASE IN
DETERMINING THE APPROPRIATE SENTENCING GUIDELINES RANGE

JAMES F. HOLDERMAN, District Judge:

The United States Probation Officer assigned to this case, who prepared the Presentence Investigation Report ("PSR") regarding defendant John Boyle, has recommended that this court in determining the appropriate sentencing guidelines range group together the mail fraud count, Count Two, and the tax count, Count Twenty-Two. The Probation Officer made the same recommendation in the PSR relating to the sentencing of defendant Angelo Torres regarding the counts of which Torres was convicted. The government has objected. For the reasons stated herein, the court again adopts the recommendation of the Probation Officer on this one point, but on a different basis. As explained below, this court rules that Count Two and Count Twenty-Two should be grouped pursuant to § 3D1.2(b) of the U.S. Sentencing Guidelines Manual ("U.S.S.G.").[1]

---

[1] The November, 2003 edition of the U.S. Sentencing Guidelines Manual applies to this case.

The government cites to Judge Posner's dissent in *United States v. D'Ambrosia*, 313 F.3d 987, 995-97 (7th Cir. 2002) as the only Seventh Circuit authority supporting its position. There the offenses that Judge Posner believed were wrongly grouped for sentencing guideline range purposes were gambling and tax offenses.

In *D'Ambrosia*, the defendants appealed, but the government did not appeal and accepted the district judge's decision under the facts to group the offenses for sentencing purposes under United States Sentencing Guideline § 3D1.2. Judge Posner explained his view that "the victims of the tax offenses are the members of the tax paying public." *Id.* Under the facts of this case in which defendant Boyle stands convicted, the court finds that the victims of the tax count, Count Twenty-Two, as well as the bribe/fraud count, Count Two, "are the members of the tax paying public" as explained further below.

The analysis of whether to group or not to group more than one offense of which a defendant stands convicted must begin with U.S.S.G. § 3D1.1 which states, in relevant part:

§ 3D1.1.   **Procedure for Determining Offense Level on Multiple Counts**

    (a)    When a defendant has been convicted of more than one count, the court shall:

        (1)    Group the counts resulting in conviction into distinct Groups of Closely Related Counts ("Groups") by applying the rules specified in § 3D1.2.

        (2)    Determine the offense level applicable to each Group by applying the rules specified in § 3D1.3.

        (3)    Determine the combined offense level applicable to all Groups taken together by applying the rules specified in § 3D1.4.

    (b)    Exclude from the application of §§ 3D1.2 - 3D1.5 any count for which the statute (1) specifies a term of imprisonment to be imposed; and (2) requires that such term of imprisonment be imposed to run consecutively to any other

2

term of imprisonment. Sentences for such counts are governed by the provisions of § 5G1.2(a).

U.S.S.G. § 3D1.2, to which § 3D1.1 refers, states as follows:

§ 3D1.2. **Groups of Closely Related Counts**

All counts involving substantially the same harm shall be grouped together into a single Group. Counts involve substantially the same harm within the meaning of this rule:

(a) When counts involve the same victim and the same act or transaction.

(b) When counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan.

(c) When one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts.

(d) When the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior.

Offenses covered by the following guidelines are to be grouped under this subsection:

§§ 2B1.1, 2B1.4, 2Ba.5, 2B4.1, 2B5.1, 2B5.3, 2B6.1;
§§ 2C1.1, 2C1.2, 2C1.7, 2C1.8;
§§ 2D1.1, 2D1.2, 2D1.5, 2D1.11, 2D1.13;
§§ 2E4.1, 2E5.1;
§§ 2G2.2, 2G2.4;
§ 2K2.1;
§§ 2L1.1, 2L2.1;
§ 2N3.1;
§ 2Q2.1;
§ 2R1.1;
§§ 2S1.1, 2S1.3;
§§ 2T1.1, 2T1.4, 2T1.6, 2T1.7, 2T1.9, 2T2.1, 2T3.1.

Specifically excluded from the operation of this subsection are:

> all offenses in Chapter Two, Part A;
> §§ 2B2.1, 2B2.3, 2B3.1, 2B3.2, 2B3.3;
> § 2C1.5;
> §§ 2D2.1, 2D2.2, 2D2.3;
> §§ 2E1.3, 2E1.4, 2E2.1;
> §§ 2G1.1, 2G2.1;
> §§ 2H1.1, 2H2.1, 2H4.1;
> §§ 2L2.2, 2L2.5;
> §§ 2M2.1, 2M2.3, 2M3.1, 2M3.2, 2M3.3, 2M3.4, 2M3.5, 2M3.9;
> §§ 2P1.1, 2P1.2, 2P1.3.

For multiple counts of offenses that are not listed, grouping under this subsection may or may not be appropriate; a case-by-case determination must be made based upon the facts of the case and the applicable guidelines (including specific offense characteristics and other adjustments) used to determine the offense level.

Exclusion of an offense from grouping under this subsection does not necessarily preclude grouping under another subsection.

In this case, the government and defendant Boyle agreed in their "Agreed Factual Basis" that as to Count Two, "Boyle concealed the payments and the scheme in violation of the laws governing City of Chicago employees." Indeed, the federal tax laws requiring the truthful reporting of income are among the laws "governing City of Chicago employees" along with the other "members of the tax paying public." *D'Ambrosia*, 313 F.3d at 995. The government and defendant Boyle also agreed in their "Agreed Factual Basis" that as to Count Twenty-Two: "Defendant concealed from the IRS the income he received from the representatives of HTP Companies."

This factual agreement between the government and the defendant makes it clear that the concealment of the illegal bribe money which defendant Boyle and the other schemers fraudulently received was an essential part the offenses charged in both Counts Two and Twenty-Two. Under the factual circumstances of the *D'Ambrosia* case, Judge Posner found: "It is common for illegal

4

gambling enterprises to pay income taxes in order to avoid compounding their offenses . . . ." 313 F.3d at 987. In the case before this court, it was <u>not</u> common for the defendants who were recipients of the bribe money charged in Count Two, and in the other counts related to Count Two, to report their bribe receipts on their federal income tax returns. In fact, none of the co-schemers reported the money on their tax returns because, as factually agreed by the government, concealment of the bribes was a part of the bribe/fraud scheme alleged in Count Two and defendant Boyle's not reporting the bribes as income on his income tax return as alleged Count Twenty-Two was in furtherance of that Count Two scheme. For example, defendant Jason Martin, who was charged in only Count Eight which incorporated certain allegations of Count Two and who was not charged with the crime of filing a false tax return, admitted, when asked at his sentencing, that he did not report the bribe money he received on his income tax returns.

The U.S.S.G. § 3D1.2 <u>Commentary</u>, Application Note 2 provides that in cases such as here where "society at large" is the victim "the counts are grouped together when the societal interests that are harmed are closely related." The last sentence of that application note states: "Ambiguities should be resolved in accordance with the purpose of this section as stated in the lead paragraph, *i.e.*, to identify and group 'counts involving substantially the same harm'."

The societal interest harmed by both the bribe/fraud scheme alleged in Count Two and by the tax offense charged in Count Twenty-Two is society's interest in having governmental bodies not be unlawfully deprived of funds that could otherwise be used for lawful governmental functions and services.

This societal interest was harmed by defendant Boyle's failure to truthfully report the bribe income on his 2002 federal income tax return which is the crime alleged in Count Twenty-Two to

which defendant Boyle pleaded guilty. The societal harm caused by the type of tax offense Boyle committed is dispersed among all members of the tax paying public because when such crimes occur there is less money available in the federal coffers to carry out governmental functions and services such as the federal funding provided to state and local governments for their use in providing governmental services for the public. The bribe/fraud scheme alleged in Count Two, of which defendant Boyle stands convicted, also harms society's interest in not having governmental coffers unlawfully deprived of funds that could otherwise be used for governmental functions and services. This is because of the unique facts in this case as explained below.

First, the government admits it cannot prove that the trucking companies who paid the bribes did not fulfill their obligations to the City of Chicago under the contracts of the Hired Truck Program. Consequently, the City suffered no harm beyond the fact that the contracts were procured by bribery. Second, the contracts for which the trucking companies paid the bribes were fixed-rate contracts. Thus, the actual income derived by the trucking companies that paid bribes to obtain the contracts was the fixed contract rate minus the bribe payments the trucking companies made. Consequently, from a business standpoint it is clear that these trucking companies would have been willing to accept a lower fixed contract rate from the City, if these trucking companies would not have had the added "expense" of paying bribes to obtain the contracts. Therefore, the City of Chicago actually could have paid less money by means of contracts containing a lower fixed rate to these Hired Truck Program contractors if these contractors had not had to pay bribes. The City of Chicago could have saved the incremental monetary amounts, which are equal to the contractors' bribe payments, because the City could have paid under the lower fixed-rate contracts. Consequently, the City would have paid the contractors less money under the Hired Truck program

than the City did. As a result of the City paying less money out under the Hired Truck Program, more money would have been available in the City's coffers to be used for other governmental functions and services for the members of the tax paying public. Therefore, under the unique facts in this case, the fraud/bribe scheme caused substantially the same harm to the same societal interest as the tax count by causing a deprivation of governmental funds that could otherwise have been used to provide lawful governmental functions and services to the members of the tax paying public.

In *United States v. Seligsohn*, 981 F.2d 1418 (3d Cir. 1993), the only appellate case other than *D'Ambrosia* cited by the government in its August 5, 2005 filing, the Third Circuit found each of the offenses charged in that case to have involved different victims. On that basis alone, the facts of that case are distinguishable from the facts here. The entire grouping discussion by the Third Circuit in *Seligsohn* was as follows:

> "Section 3D1.2 of the Guidelines provides that "[a]ll counts involving substantially the same harm shall be grouped together." The purpose is to impose "incremental punishment for significant additional criminal conduct," but at the same time prevent double punishment for essentially the same conduct. *United States v. Toler*, 901 F.2d 399, 402 (4th Cir. 1990) (citing U.S.S.G. Ch. 3, Pt. D, intro. comment.).
>
> Subsections (a) and (b) of section 3D1.2 allow grouping when a victim of two or more counts is the same. Subsection (d) allows grouping when "the offense level is determined largely on the basis of the total amount of harm or loss" and lists a number of offenses at issue here which fit into that category, including tax evasion, mail fraud, and bribery. Essentially, the Guidelines focus on "Groups of Closely-Related Counts." U.S.S.G. § 3D1.1.
>
> The district court grouped the counts according to the three principal offenses: mail fraud, bribery, and tax evasion. The defendants contend that because those offenses are listed under subsection (d) and all involve monetary loss, the counts should have all been grouped together.
>
> We observe first that the three groups of offenses involved different victims – the mail fraud involved homeowners, the bribery involved the union, and the tax evasion

7

involved the government. Grouping under (a) or (b) would have, therefore, been improper. *See United States v. Astorri*, 923 F.2d 1052, 1056 (3d Cir. 1991).

Moreover, although all of the counts are listed in subsection (d) as appropriate for grouping, that inclusion does not mean that the counts must be grouped. *See United States v. Harper*, 972 F.2d 321, 322 (11th Cir. 1992) (grouping under subsection (d) is not automatic). Counts must be of the "same general type" before grouping is appropriate. *Id.; see also United States v. Patterson*, 962 F.2d 409, 416-17 (5th Cir. 1992); *United States v. Porter*, 909 F.2d 789, 793 (4th Cir. 1990).

It is clear that although the mail fraud counts involved many victims, the nature of the offense as to each was similar. The mail fraud counts were thus, appropriately grouped together. On the other hand, the tax evasion counts differed in nature and were not an essential part of or related to the mail fraud. The tax evasion counts also affected different victims. Similarly, the bribery of a union official differs substantially from tax evasion. Although the mail fraud counts could be appropriately grouped together, they cannot be combined further with the tax evasion or bribery counts.

In *United States v. Cusumano*, 943 F.2d 305, 313 (3d Cir. 1991), we concluded that a determination of whether "various offenses were part of one overall scheme" is essentially a factual issue which we review under a clearly erroneous standard. The defendants have failed to persuade us that the district court's grouping was clearly erroneous. Our decision to uphold the court's grouping of the counts is further influenced by the fact that when reviewing the appropriateness of a grouping, deference must be given to the district court. *United States v. Beard*, 960 F.2d 965, 969 (11th Cir. 1992).

Because the sentences must be reviewed on remand, however, we point out that before grouping the various offenses to determine the score, the district court must first apply the applicable Guidelines for each offense. In other words, if some of the offenses occurred before November 1, 1989, the Guidelines appropriate for that period of time must be used before those offenses are grouped with violations occurring after November 1, 1989. *See* U.S.S.G. § 1B1.1(a)-(d). Through this method the defendants are given the leniency required by ex post facto considerations.

The offenses in the instant case do not involve different victims. Under the facts here, the victims are all members of the tax paying public. In no published appellate opinion disallowing the grouping of fraud and tax counts have the victims of both bribe/fraud and tax crimes been the

8

members of the tax paying public, in the manner they are here. This is because in no other case discussed in a published appellate opinion has the societal interest harmed by both crimes been as uniquely the same as the facts of this case. The decision to group offenses or not group offenses for sentencing guideline purposes is highly fact specific. *See, e.g., United States v. Martin*, 363 F.3d 25, 42 (1st Cir. 2004) (no grouping of fraud and tax counts where food distribution representative defrauded supermarket chain, DeMoulas, and evaded taxes, *i.e.*, different victims involved); *United States v. Vitale*, 159 F.3d 810 (3d Cir. 1998) (no grouping of fraud and tax counts where employee defrauded employer and evaded taxes on the proceeds); *Weinberger v. United States*, 268 F.3d 346 (6th Cir. 2001) (no grouping of fraud and tax counts where lawyer embezzled money from his clients and evaded taxes on the proceeds); *United States v. Lindsay*, 184 F.3d 1138 (10th Cir. 1999) (no grouping of mail fraud and tax crimes where tax protestor evaded federal income taxes and sent a separate bogus certified check to the state.)

The Second Circuit *see, e.g., United States v. Gordon*, 291 F.3d 181, 189-90 (2d Cir. 2002); *United States v. Fitzgerald*, 232 F.3d 315 (2d Cir. 2000); *United States v. Petrillo*, 237 F.3d 119 (2d Cir. 2000) and the Fifth Circuit *see, e.g., United States v. Haltom*, 113 F.3d 43, 46 (5th Cir. 1997), have each recognized U.S.S.G. § 3D1.2 grouping of mail fraud and tax counts based on the unique facts of the cases before them. Judge Newman of the Second Circuit has explained, however, that the law regarding whether to group tax offenses along with the crimes that produced the unreported income is not clear. *Gordon*, 291 F.3d at 198 (Newman, J concurring). ("Ultimately, the Commission needs to cut through this morass and tell us in plain English whether it wants tax offenses grouped with the offenses that produced the income on which the taxes were evaded.")

This court has reviewed the case law of the other Circuits and the non-binding recommendation of the United States Sentencing Commission's staff's booklet entitled "Questions Most Frequently Asked About the Sentencing Guidelines", Vol. V (March 1, 1992), favoring grouping, as well as the Probation Officer's non-binding analysis in the PSR, page 9, lines 274-288 regarding grouping. After reviewing these sources and evaluating the facts in this case, the court believes that the highly specific factual circumstances of this case favor the grouping of Counts Two and Twenty-Two pursuant to § 3D1.2(b) of the 2003 Sentencing Guideline Manual.

ENTER:

JAMES F. HOLDERMAN
United States District Judge

DATE: August 10, 2005